IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 12-cv-03178-PAB

SHERRY THIELEMIER,

    Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

    Defendant.

**ORDER**

This matter is before the Court on plaintiff Sherry Thielemier's complaint [Docket No. 1], filed on December 5, 2012. Plaintiff seeks review of the final decision of defendant Carolyn W. Colvin (the "Commissioner")[1] denying plaintiff's claim for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act (the "Act"), 42 U.S.C. §§ 401-33 and 1381-83c.[2] The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. § 405(g).

**I. BACKGROUND**

On April 20, 2010, plaintiff applied for disability benefits under Title II and Title XVI of the Act. R. at 13. Plaintiff alleged that she had been disabled since April 14, 2010. *Id*. After an initial administrative denial of her claim, plaintiff appeared at a

---

[1]Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin, who as of Feb. 14, 2013 has been named as the Acting Commissioner, is automatically substituted for Michael J. Astrue as the defendant in this suit.

[2]The Court has determined that it can resolve the issues presented in this matter without the need for oral argument.

hearing before an Administrative Law Judge ("ALJ") on September 1, 2011. *Id*. On September 23, 2011, the ALJ issued a decision denying plaintiff's claim. *Id*. at 22.

The ALJ found that plaintiff had the following severe impairments: "status post lumbar diskectomy and fusion, status post C4-C5 fusion, cervical radiculopathy, right knee status post surgery." R. at 15. The ALJ found that these impairments, alone or in combination, did not meet one of the regulations' listed impairments, *id*. at 16, and ruled that plaintiff had the residual functional capacity ("RFC") to

> perform a range of sedentary work as defined in 20 C.F.R. § 404.1567(a) and 416.967(a). The claimant can lift and/or carry and push and/or pull a maximum of 10 pounds occasionally and 5 pounds frequently; sit for 30 minutes at a time and a total of six hours of an eight hour work day; and walk and/or stand up to two hours at a time in an eight hour work day, standing no more than 1 hour at a time, with a sit and stand option. The claimant is precluded from climbing ladders, ropes, or scaffolds and from more than occasional climbing of ramps or stairs. The claimant requires a cane to ambulate steadily. The claimant is precluded from reaching overhead and from operation of foot controls with the right lower extremity. The claimant is further precluded from extreme cold, hazards, or exposure to fumes, odors, gases, dusts, or respiratory irritants.

R. at 17. Based upon this RFC and in reliance on the testimony of a vocational expert ("VE"), the ALJ concluded that "the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." R. at 22.

The Appeals Council denied plaintiff's request for review of this denial. R. at 1. Consequently, the ALJ's decision is the final decision of the Commissioner.

## II. ANALYSIS

### A. Standard of Review

Review of the Commissioner's finding that a claimant is not disabled is limited to

2

determining whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *See Angel v. Barnhart*, 329 F.3d 1208, 1209 (10th Cir. 2003). The district court may not reverse an ALJ simply because the court may have reached a different result based on the record; the question instead is whether there is substantial evidence showing that the ALJ was justified in her decision. *See Ellison v. Sullivan*, 929 F.2d 534, 536 (10th Cir. 1990). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007). Moreover, "[e]vidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). The district court will not "reweigh the evidence or retry the case," but must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Flaherty*, 515 F.3d at 1070. Nevertheless, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

### B. The Five-Step Evaluation Process

To qualify for disability benefits, a claimant must have a medically determinable physical or mental impairment expected to result in death or last for a continuous period of twelve months that prevents the claimant from performing any substantial gainful work that exists in the national economy. 42 U.S.C. § 423(d)(1)-(2). Furthermore,

> [a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A) (2006). The Commissioner has established a five-step sequential evaluation process to determine whether a claimant is disabled. 20 C.F.R. § 404.1520; *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988). The steps of the evaluation are:

> (1) whether the claimant is currently working; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets an impairment listed in appendix 1 of the relevant regulation; (4) whether the impairment precludes the claimant from doing his past relevant work; and (5) whether the impairment precludes the claimant from doing any work.

*Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992) (citing 20 C.F.R. § 404.1520(b)-(f)). A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *Casias v. Sec'y of Health and Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991).

The claimant has the initial burden of establishing a case of disability. However, "[i]f the claimant is not considered disabled at step three, but has satisfied her burden of establishing a prima facie case of disability under steps one, two, and four, the burden shifts to the Commissioner to show the claimant has the residual functional capacity (RFC) to perform other work in the national economy in view of her age, education, and work experience." *See Fischer-Ross v. Barnhart,* 431 F.3d 729, 731 (10th Cir. 2005); *see also Bowen v. Yuckert,* 482 U.S. 137, 146 n. 5 (1987). While the claimant has the

4

initial burden of proving a disability, "the ALJ has a basic duty of inquiry, to inform himself about facts relevant to his decision and to learn the claimant's own version of those facts." *Hill v. Sullivan,* 924 F.2d 972, 974 (10th Cir. 1991).

### C. The ALJ's Decision

Plaintiff argues that the ALJ erred by (1) failing to accord the proper weight to the opinion of plaintiff's treating physician, Dexter Koons; (2) improperly relying on Dr. Koons' opinion that plaintiff is capable of performing sedentary work; (3) failing to consider the functional limitations imposed by plaintiff's headaches; and (4) failing to consider the functional limitations imposed by numbness in plaintiff's right hand, which renders her unable to perform two of the three jobs identified by the VE. Docket No. 19.

#### *1. Medical Source Opinions*

If the medical opinion of a treating practitioner is well supported by medically acceptable evidence and is not inconsistent with the other substantial evidence in the record, an ALJ must give it controlling weight. 20 C.F.R. § 416.927(c)(2). In the event that the opinion of a treating physician does not merit controlling weight, an ALJ must consider the following factors in determining how to evaluate the opinion: length of the treating relationship, frequency of examination, nature and extent of the treating relationship, evidentiary support, consistency with the record, medical specialization, and other relevant considerations. *Id.* An ALJ may dismiss or discount an opinion from a medical source only if the decision to do so is "based on an evaluation of all of the factors set out in the cited regulations" and if he provides "specific, legitimate reasons"

5

for his rejection. *Chapo v. Astrue*, 682 F.3d 1285, 1291 (10th Cir. 2012). However, an ALJ need not "apply expressly each of the six relevant factors in deciding what weight to give a medical opinion," so long as he provides "good reasons in his decision" for the weight accorded to each opinion. *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007).

An ultimate determination on the question of a claimant's disability is reserved to the Commissioner, 20 C.F.R. § 416.927(d), and thus, a treating physician's opinion that a claimant is not disabled may not be given controlling weight or special significance. *See* SSR 96-5p, 1996 WL 374183, at *2 (July 2, 1996). Nonetheless, the Social Security rules "provide that adjudicators must always carefully consider medical source opinions about any issue, including opinions about issues that are reserved to the Commissioner." *Id.*

Plaintiff argues that the ALJ erred because he (1) did not accord Dr. Koons' opinion controlling weight, even though Dr. Koons has treated plaintiff for over ten years, issued opinions supported by magnetic resonance imaging ("MRI") and other tests and examination findings, and is familiar with the instruments used in plaintiff's back surgery; (2) did not discuss Dr. Koons' treating relationship with plaintiff or Dr. Koons' relevant medical specialization; and (3) placed too much weight on Dr. Koons' opinion that plaintiff could perform sedentary work, while disregarding Dr. Koons' opinion that plaintiff could sit for only two hours total in an eight-hour day, which would preclude performing sedentary work. The Commissioner responds that the ALJ properly considered the relevant factors and provided appropriate reasons for rejecting certain portions of Dr. Koons' opinions. Docket No. 20 at 13-19.

Dr. Koons, a neurosurgeon and pain specialist, first examined plaintiff in November 1998 and continued to treat her for neck and back pain through at least early 2011.  *See* R. at 891, 929-30.  In April 2001, an MRI indicated that plaintiff had an "L5-S1 disk protrusion over the left side with left disk bulging and minimal displacement of the S1 nerve root."  R. at 223.  On October 1, 2001, plaintiff underwent an L5-S1 laminectomy and diskectomy.  *Id.*

At the hearing before the ALJ, plaintiff testified that she was working full time as a convenience store manager through April 14, 2010.  R. at 38.  Plaintiff testified that she was able to perform this job with the accommodations that she did not have to lift heavy items and that she had a stool to sit on.  R. at 38-39.  She testified that she lost the job in April 2010 and that she believes her termination was motivated by the fact that she could not lift items up off the ground.  R. at 39.

On April 12, 2011, Dr. Koons completed a Revised Medical Assessment of Ability to Do Work-Related Activities (Physical) for plaintiff.  R. at 932-36.  Dr. Koons opined that plaintiff could occasionally lift up to ten pounds, but never lift more weight than that; occasionally carry up to ten pounds, but never carry more weight than that; sit for two hours at a time and for two hours total in an eight-hour workday; stand for thirty minutes at a time and for two hours total in an eight-hour workday; walk for thirty minutes at a time and for two hours total in an eight-hour workday; never reach, push, or pull with either hand; frequently handle objects with both hands; continuously finger and feel objects with both hands; frequently operate foot controls with both feet; occasionally climb stairs and balance, but never climb ladders, stoop, kneel, crouch, or crawl; never be exposed to unprotected heights, moving mechanical parts, extreme

7

cold, extreme heat, or vibrations; occasionally be exposed to humidity and dust, odors or fumes; continuously operate a motor vehicle; and tolerate moderate office noise. *Id*.

On August 1, 2011, Dr. Koons completed a Medical Opinion Regarding Ability to Do Work-Related Activities for plaintiff. R. at 939-42. Dr. Koons opined that plaintiff could frequently lift and carry ten pounds; stand, walk, and sit approximately two hours total in an eight-hour day; sit or stand for no more than thirty minutes at a stretch, at which point she would need to walk around for five minutes; occasionally climb stairs; frequently operate foot controls with both feet; never be exposed to extreme temperatures, hazards, fumes, odors, dusts, and gases; tolerate minimal exposure to noise; and tolerate some exposure to wetness and humidity. He opined that plaintiff would need to be able to alternate between sitting and standing at will; would miss work approximately once per month; and would experience increased pain if required to reach, push, or pull. *Id*. He opined that plaintiff's limitations began in June of 2002. R. at 942. He opined that plaintiff is capable of performing sedentary work. R. at 943.

In his decision, the ALJ found that there was "no objective or subjective evidence to support a worsening of condition from prior to the claimant's alleged onset date while she was able to perform full time job tasks or after the claimant's alleged onset date." *Id*. at 18. This finding was based in part on the fact that plaintiff's subjective complaints of pain and resulting limitations did not change after the alleged onset of her disability, as well as on plaintiff's statement to Dr. Koons seven months after her alleged onset date that she was staying active by cleaning the house and regularly walking the dog. R. at 18-19.

The ALJ also noted that plaintiff told Dr. Koons in the summer and fall of 2009

that she was staying active with her family and that her medication allowed her to "maintain her level of function," including her ability to work full time. R. at 18 (citing R. at 905-07). He noted that there was no evidence that Dr. Koons had instructed plaintiff to use a cane, although she testified at the hearing that Dr. Koons had prescribed one. *Id*. at 19 (citing R. at 35). He noted that Dr. Koons' August 2011 opinion was internally inconsistent because Dr. Koons opined that plaintiff could perform sedentary work, despite finding functional limitations that would preclude such activity. *Id*. at 20.

In discussing the weight accorded to Dr. Koons' opinion, the ALJ stated:

> Dr. Koons' limitations were generally accepted however, given the medical evidence and the claimant's reported subjective complaints, the record reflect [sic] the claimant is capable of performing sedentary work within the residual functional capacity identified in this decision. Furthermore, the claimant's reported activities and abilities to Dr. Koons and at the hearing are consistent with the residual functional capacity identified in this decision. Dr. Koons [sic] opinion is given some weight and many of his limitations were adopted in the residual functional capacity in this decision.

R. at 20.

The ALJ formulated an RFC that differs from Dr. Koons' opinions in the following respects: (1) the ALJ found that plaintiff could push and/or pull a maximum of ten pounds occasionally and five pounds frequently, while Dr. Koons opined that plaintiff would be unable to push or pull any amount of weight; (2) the ALJ found that plaintiff could sit for a total of six hours in an eight-hour workday, while Dr. Koons opined that plaintiff would be unable to sit for more than two hours in an eight-hour workday; (3) the ALJ found that plaintiff could reach so long as she did not have to reach overhead, while Dr. Koons opined that plaintiff could not reach at all. *Compare* R. at 17 *with* R. at 932-43.

The above-listed departures from Dr. Koons' opinion are consistent with the opinions of Drs. Adam Summerlin and Alan Ketelhohn. Dr. Summerlin conducted a consultative examination of plaintiff on August 14, 2010 and opined that she had the RFC to sit, stand, and walk for up to six hours total in an eight-hour day and lift or carry twenty pounds occasionally and ten pounds frequently. R. at 921. He opined that plaintiff's cane was medically necessary; that she should be limited in climbing, balancing, stooping, kneeling, crouching, and crawling; and that she had no manipulative limitations. *Id*. at 920-21. The ALJ stated that Dr. Summerlin's opinion was "given some weight however, more significant limitations were identified." *Id*. at 20.

On August 26, 2010, Dr. Ketelhohn completed a Disability Determination Explanation form for plaintiff. R. at 56-65. Based on a review of the record evidence, Dr. Ketelhohn opined that plaintiff had the RFC to lift or carry twenty pounds occasionally and ten pounds frequently "with the hand that is not using the cane"; sit, stand, and walk for a total of six hours in an eight-hour workday; and push and pull twenty pounds occasionally and ten pounds frequently. *Id*. at 61, 63. He opined that plaintiff was limited in her ability to climb ramps, stairs, or scaffolds; limited in her ability to balance, stoop, kneel, crouch, and crawl; and required to use a cane to walk, but that she did not have manipulative limitations. *Id*. at 62. He opined that plaintiff had the RFC to perform light work. *Id*. at 63.

The ALJ's decision sets forth valid reasons for the weight accorded to Dr. Koons' opinion. Specifically, the ALJ found that Dr. Koons' opinions were entitled to only some weight because they were internally contradictory and not fully supported by record evidence showing that plaintiff's subjective complaints and objective condition did not

change between the period when she was able to work full time and the period following her alleged onset of disability. R. at 18-20. Furthermore, the ALJ noted contradictions between Dr. Koons' opinions and plaintiff's statements that she was remaining active after her alleged onset date. *Id*. at 18-19.

Although Dr. Koons' opinion that plaintiff is capable of performing sedentary work is an opinion on an issue reserved to the Commissioner, the ALJ was required to consider that opinion in formulating plaintiff's RFC and was entitled to take into account the extent to which it conflicted with Dr. Koons' other opinions in weighing those opinions. *See* SSR 96-5p, 1996 WL 374183, at *2. There is no indication in the ALJ's decision that he placed undue weight or emphasis on this opinion. The lack of consistency and supportability that the ALJ found in Dr. Koons' opinions was a valid reason for according them only "some" weight, as opposed to controlling weight. *See* 20 C.F.R. § 404.1527(c).

Contrary to plaintiff's contention, *see* Docket No. 19 at 16, the ALJ's decision indicates that he also considered the length and nature of Dr. Koons' treating relationship with plaintiff insofar as he noted that Dr. Koons has been treating plaintiff since before her back surgery in 2001, R. at 18, and considered Dr. Koons' treatment notes in reviewing the progression of plaintiff's impairments over time. R. at 18-19. The fact that the ALJ did not explicitly discuss Dr. Koons' medical specialty–the only remaining factor explicitly listed under § 404.1527(c)–does not indicate that the ALJ failed to apply the correct legal standard, especially given the ALJ's statement that he considered the opinion evidence "in accordance with the requirements" of 20 C.F.R. § 404.1527. *See* R. at 17; *Oldham*, 509 F.3d at 1258; *Flaherty,* 515 F.3d at 1071

("[O]ur general practice, which we see no reason to depart from here, is to take a lower tribunal at its word when it declares that it has considered a matter.") (citation omitted).

In sum, the ALJ "provided good reasons in his decision for the weight he gave to [Dr. Koons'] opinions," which is all that was required. *See Oldham*, 509 F.3d at 1258.

### 2. Functional Limitations

Plaintiff argues that the ALJ failed to account for her headaches or her right-sided neuropathy in his RFC determination. Docket No. 19 at 18-20. The Commissioner responds that the ALJ sufficiently considered all of plaintiff's severe and non-severe impairments. Docket No. 20 at 19-22.

When a claimant has a severe impairment that does not meet or equal one of the impairments listed in the Social Security regulations, an ALJ must consider "the limiting effects of all" the claimant's impairments, "even those that are not severe," in formulating an RFC. 20 C.F.R. § 404.1545(e); *see also* SSR 96-8P, at *5 (July 2, 1996) ("While a 'not severe' impairment(s) standing alone may not significantly limit an individual's ability to do basic work activities, it may–when considered with limitations or restrictions due to other impairments–be critical to the outcome of a claim."). An ALJ need not include a particular impairment in his RFC determination where the record does not contain evidence that the impairment imposes functional limitations on the claimant. *Jimison ex rel. Sims v. Colvin*, 513 F. App'x 789, 793 (10th Cir. 2013).

#### a. Neck Pain and Headaches

Plaintiff reported neck pain to her primary care physician, Kenneth Danylchuk, in December 2001 and February 2002. R. at 631-32. In June 2002, she went to the

emergency room following an incident in which a soda machine fell on her. *Id*. at 632. Later that month, she told Dr. Koons that she was having neck pain as a result of this incident. *Id*. at 632-33. She continued to complain of neck pain in 2003. R. at 633-34. In March 2003, she had an "EMG/NCV"[3] study of her right neck and upper right extremity, which "revealed right median neuropathy at the wrist and absence of radicular findings." *Id*. at 634. In June 2003, plaintiff was seen by Dr. Michael O'Brien, an orthopedist, who found "mild to moderate degenerative changes at [C4-C5 and C5-C6][4] with some bulging." *Id*.

On February 22, 2011, plaintiff told Dr. Koons that she was experiencing "some" headaches radiating from her neck, but that she was able to sleep as long as the pain did not increase. R. at 930.

At the hearing before the ALJ, plaintiff testified that she can play video games for half an hour before getting a headache. R. at 37 ("I just can't play it for a long time, because then I get migraines because my head is down or–you know, because of my neck I get really bad migraines."). She testified that the pain in her neck radiates into her shoulders and back and causes numbness in her hands, which prevents her from being able to use them. *Id*. at 41-42. She testified that she experiences episodes of numbness every day, as well as migraines four or five days a week that can last all day

---

[3]An EMG or electromyogram is a "graphic representation of the electric currents associated with muscular action." Stedman's Medical Dictionary, at 126730 (27th ed. 2000). NCV or nerve conduction velocity is the "rate of impulse conduction in a peripheral nerve or its various component fibers." *Id*. at 433150.

[4]C4, C5, C6, and C7 are vertebrae located in the cervical spine. Stedman's Medical Dictionary, at 59010 (27th ed. 2000).

13

and cause blurred visions, hearing problems, and prolonged periods of numbness in her arms and hands. *Id*. at 42. She testified that she treats her headaches with an over-the-counter medication or, when that does not work, by lying down and massaging her neck. *Id*. at 43. She testified that she feels pain in her neck and shoulders when she reaches in any direction, when she turns her head, or when she holds her head in one place for too long. *Id*. at 43-44 ("Q. So when you say reach, which direction? Is it all directions or certain directions? A. I think it's all directions. Just that above my head there's more pain that like down to my sides or something like that.").

In his decision, the ALJ stated, with respect to plaintiff's headaches and neck pain:

> [Dr. Koons] did however note in February 2011, the claimant has "some" headaches radiating from her neck, but she reported she was "sleeping ok" unless the pain increased. This is consistent with the claimant's testimony she is having headaches but not to the degree of severity alleged. Additionally, the claimant has reported that any hard jerking can paralyze her. The only objective findings for the claimant's neck impairment are notes mentioned in her record consisting of electromyographic (EMG) findings showing no cervical radiculopathy in March 2003 and an MRI suggesting possible cord compression at C4-C5 and C5-C6. There is very limited follow-up care for her cervical problems. Her treatment record with Dr. Koons is replete of subjective complaints aside from the headaches noted above. There is nothing more in the evidence to support an allegation of cervical problems or migraine headaches. Furthermore, she is using over the counter medications to treat the symptoms of her migraines and there is no diagnosis or prescription medication to treat the symptoms. With regard to the claimant's neck, back, and migraines, she made no significant complaints of a worsening condition and thus no additional objective testing was conducted prior to or after her alleged onset date. Even her subjective complaints are consistent both prior to her alleged onset date and after her alleged onset date suggesting the claimant did not have a worsening of condition that would preclude work in the activity range specific by the residual functional capacity identified in this decision.

R. at 18-19 (internal citations omitted). The ALJ asked the VE what opportunities were

14

available for a person with plaintiff's RFC who also needed to lie down on an unscheduled basis throughout the day and could only concentrate for half an hour at a time because of migraine headaches. R. at 51. The VE testified that "those criteria would preclude all competitive work." *Id*. The ALJ included in his RFC determination the finding that plaintiff cannot reach overhead. *Id*. at 17.

There is no indication that the ALJ failed to consider the evidence of neck pain and headaches that plaintiff cites. Rather, the ALJ found that this evidence was outweighed by the record evidence that (1) there were minimal objective findings that would support plaintiff's subjective complaints; (2) plaintiff did not seek significant follow-up care for her neck pain; (3) plaintiff did not complain of a worsening in her neck pain or headaches after the alleged onset of her disability; and (4) plaintiff's physicians did not prescribe treatment beyond over-the-counter medication for her neck pain or headaches. *See id*. This is substantial evidence in support of the ALJ's RFC determination with respect to plaintiff's neck pain and headaches. *See Flaherty*, 515 F.3d at 1070. The Court will not re-weigh the evidence to arrive at a different conclusion. *See id*.

Plaintiff states that, when she complained to Dr. Koons in February 2011 about her migraines, she was already taking a prescription medication containing acetaminophen and oxycodone. Docket No. 19 at 19. By this statement, the Court surmises that plaintiff intends to argue that it was improper for the ALJ to consider plaintiff's use of over-the-counter medication for her migraines given that plaintiff was already taking prescription pain medication. However, there is no evidence that plaintiff's prescription pain medication was prescribed to treat her neck pain versus her

15

headaches or that her medical providers considered her neck pain or headaches serious enough to warrant prescription medication. Plaintiff's contention on this point does not undermine the ALJ's conclusion.

Plaintiff states that the ALJ found that plaintiff was credible in describing her headaches and neck pain. Docket No. 19 at 19. As the above excerpt indicates, however, the ALJ did not find credible the conclusion that plaintiff's neck pain or headaches would preclude her from performing sedentary work on a full-time basis. *See* R. at 19.

Plaintiff argues that the ALJ should have included in the RFC determination a limitation on plaintiff's ability to concentrate and that this limitation would preclude all competitive employment. Docket No. 19 at 19 (citing R. at 51). However, the medical source opinions do not indicate that plaintiff is limited in her ability to concentrate. R. at 921, 932-43. Furthermore, at the hearing before the ALJ, plaintiff linked her inability to play video games for more than half an hour to pain caused by holding her head in one place and not to an inability to concentrate. R. at 37. There is no basis for finding that the ALJ erred by not included a limitation on plaintiff's ability to concentrate.

### b. Right-sided Neuropathy and Numbness

Plaintiff argues that the ALJ erred in failing to include "any fingering, handling, or feeling limitations" in the RFC determination, despite record evidence of her neuropathy and right-sided numbness. Docket No. 19 at 19.

In March 2003, testing revealed that plaintiff suffered from "right median

neuropathy at the wrist" without radiculopathy.[5] R. at 634. At the time, she complained of "intermittent numbness of right fingers and night time numbness of hand 3-4 times per week." *Id*.

Dr. Koons opined that plaintiff could finger or feel continuously and handle frequently with both hands. R. at 933, 940. Dr. Summerlin found that plaintiff had "decreased sensation to pinprick in a nondermatomal distribution diffusely over the right side including the right arm, the right hand, the right leg and the right face" as well as "decreased sensation to vibration in the same distribution and to light touch only in the right arm." R. at 920. He opined that plaintiff was not limited in her ability to perform manipulative activities. *Id*. at 921. Dr. Ketelhohn opined that plaintiff had no manipulative limitations. R. at 62.

At the hearing, plaintiff testified that when her pain is "really bad," she has problems tying her shoes, but that she does not have much trouble with buttons or zippers and that she can grab a tissue out of a box. R. at 34-35. She testified that she can play video games for up to half an hour and that she likes to cross stitch. *Id*. at 37. Plaintiff testified that she has episodes of numbness in her arms and hands almost every day, during which she is unable to grip objects or pick them up. *Id*. at 42.

The ALJ did not find that plaintiff's neuropathy constituted either a severe or non-severe impairment. R. at 15-16. He found that plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not credible to the

---

[5]The term "neuropathy" is used to refer to a "disease involving the cranial nerves or the peripheral autonomic nervous system." Stedman's Medical Dictionary, at 272690 (27th ed. 2000). "Radiculpathy" is a "disorder of the spinal nerve roots." *Madron v. Astrue*, 311 F. App'x 170, 172 n.3 (10th Cir. 2009).

extent they are inconsistent" with the ALJ's RFC determination. *Id*. at 18. He noted the 2003 EMG findings "showing no cervical radiculopathy." *Id*. at 19. The ALJ did not otherwise discuss plaintiff's complaints of peripheral numbness.

Since none of the medical sources opined that plaintiff had manipulative limitations, the only evidence that plaintiff's neuropathy limited her functional abilities was her own testimony. The ALJ found that this testimony was not fully credible. *See* R. at 18. Plaintiff does not challenge the ALJ's credibility findings. *See generally* Docket No. 19. In addition, plaintiff testified that she is able to perform manipulative activities, such as using buttons and zippers, playing video games, and cross stitching. *See* R. at 34-35, 37. Since the record does not contain credible evidence that plaintiff's neuropathy is functionally limiting, the ALJ did not err in excluding this impairment from plaintiff's RFC. *See Jimison*, 513 F. App'x at 793.

## III. CONCLUSION

Given the Court's finding that the ALJ's RFC determination is supported by substantial evidence, there is no need to address plaintiff's argument that she is not able to perform the jobs identified by the VE. Docket No. 19 at 20-22. Wherefore, it is

**ORDERED** that the decision of the Commissioner that plaintiff Sherry Thielemier was not disabled is AFFIRMED.

DATED March 31, 2014.

BY THE COURT:

s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge